# EXHIBIT B



155 Water Street (DUMBO)
Brooklyn, New York 11201
www.shihatageddes.com
646-974-1143

March 15, 2023

The Honorable Frederic Block
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re: Spencer Lee Schneider v. Odyssey Study Group LLC, et al.
       Civil Docket No. 22-07686 (FB) (VMS)

Dear Judge Block,

  We represent the plaintiff Spencer Schneider in connection with the above-referenced case and submit this letter in connection with the defendants' request for a pre-motion conference in advance of their filing a motion to dismiss. (See Ltr. Of Rhett O. Millsaps II, dated Mar. 8, 2023 (ECF Dkt. No. 18) ("Def'ts Ltr.")). As set forth herein, the plaintiff respectfully opposes the defendants' motion to dismiss the complaint filed in this matter (the "Complaint" or "Compl.").

## BACKGROUND

  The 51-page Complaint alleges that the defendants operated a sophisticated, secretive and commercial enterprise – not a "spiritual organization" (Def't's Ltr. at 1) – and that the enterprise used psychological manipulation and other coercive tactics to prey upon, indoctrinate and exploit young, educated New Yorkers for the defendants' self-enrichment. As set forth in detail in the Complaint, the defendants knowingly, intentionally and fraudulently recruited Mr. Schneider to join their cult in or about 1989 and for the next 24 years, they used coercive tactics to compel Mr. Schneider and others to perform thousands of hours of labor and services – sometimes under grueling and dangerous conditions – for the benefit of the defendants and their co-conspirators.

## DISCUSSION

I. The Complaint Sets Forth Valid Causes of Action under the TVPA

  In 2003, Congress created a private, civil right of action for those subjected to forced labor against those who conducted or knowingly benefitted from the forced labor. 18

U.S.C. § 1595. The defendants claim that the Trafficking Victims Protection Act of 2000 and its successor statutes (collectively, the "TVPA") – legislation that criminalized forced labor – do not protect individuals like Mr. Schneider from the types of harm described in the Complaint. They are wrong. While, as part of its extensive findings in enacting the TVPA, Congress found that "traffickers primarily target women and children, who are disproportionately affected by poverty, the lack of access to education, chronic unemployment, discrimination, and the lack of economic opportunities in countries of origin[,]" see 22 U.S.C § 7101(b)(4),[1] nowhere does Congress limit the application of the TVPA to women and children or to those with a certain educational or employment background. Indeed, the plain language of the 18 U.S.C. § 1589 – which criminalizes the forced labor of any "person" – is unambiguous in its broad application. Nor does its legislative history suggest otherwise. In fact, the use of the term "disproportionately" in the quoted Congressional finding itself recognizes that others – including men and those with education and other employment – are also victims of traffickers, even if they are targeted less frequently than women and children. At issue here is only whether the defendants knowingly and intentionally obtained Mr. Schneider's labor "by means of any scheme, plan, or pattern intended to cause [Mr. Schneider] to believe that, if [Mr. Schneider] did not perform such labor or services, [Mr. Schneider] or another person would suffer serious harm." As set forth extensively in the Complaint, they did.

        Additionally, contrary to the defendants' contentions, the TVPA protects individuals from the precise coercive tactics alleged in the Complaint – i.e., non-violent coercion. Section 1589 was enacted after the Supreme Court held that the term "involuntary servitude" – used in a different statute (18 U.S.C. § 1584) – was "limited to cases involving the compulsion of services by the use or threatened use of physical or legal coercion." United States v. Kozminski, 487 U.S. 931, 948 (1988). The Supreme Court, however, invited Congress to broaden the definition by enacting legislation, see Kozminski, 487 U.S. at 952 (reiterating its holding as to the definition of involuntary servitude "[a]bsent change by Congress"), and Congress accepted that invitation in 2000 when it enacted the forced labor statute, codified in 18 U.S.C. § 1589. In support of the TVPA's passage, Congress noted Kozminski's narrow definition of involuntary servitude and stated that "[i]nvoluntary servitude statutes are intended to reach cases in which persons are held in a condition of servitude through *nonviolent coercion*." 22 U.S.C. § 7101(b)(13) (emphasis added). The defendants' conduct falls within that broad swath of conduct proscribed by Congress.

II.    <u>The Causes of Action Are Not Barred by the First and Fourteenth Amendments</u>

        The defendants also allege that their criminal acts are protected by the First and Fourteenth Amendments. (Def'ts Ltr. at 3). Not so. The right to associate – protected by the First

---

[1] In their letter, the defendants incorrectly assert that for a "colorable TVPA case," a plaintiff must be "vulnerable." (Def'ts Ltr. at 2). There is no such requirement in the TVPA, and juries have convicted defendants — including cult leaders — of trafficking victims who were educated and not economically disadvantaged, disproving the stereotype defendants proffer. See, e.g., United States v. Lawrence Ray, Criminal Docket No. 20-110 (LDL) (S.D.N.Y.); United States v. Keith Raniere, et al., Criminal Docket No. 18-204 (NGG) (E.D.N.Y.).

2

Amendment – does not give the defendants license to devise a "scheme, plan, or pattern intended to cause [Mr. Schneider] to believe that, if [Mr. Schneider] did not perform such labor or services, [Mr. Schneider] or another person would suffer serious harm." Cf. United States v. Calimlim, 538 F.3d 706, 712 (7th Cir. 2008) ("To the extent that [18 U.S.C.] § 1589 raises First Amendment concerns, the scienter requirement limits the prohibited speech to unprotected speech."); United States v. Gagliardi, 506 F.3d 140, 148 (2d Cir. 2007) ("speech is not protected by the First Amendment when it is the very vehicle of the crime itself") (citation and quotation marks omitted); United States v. Estrada-Tepal, 57 F.Supp.3d 164 (E.D.N.Y. 2014) (rejecting a First Amendment challenge in which the defendants argued that 18 U.S.C. § 1591 (another provision within the TVPA) "substantially burdens expressive association rights").

Nor can the defendants escape liability under the so-called "ministerial exception." Even assuming arguendo that the defendants fall within the ministerial exception (they do not), as another judge in this district once observed, "[g]iven the relative magnitude of the deprivation of individual liberty in cases covered by the TVPA, and the international scope and significance of human trafficking, the TVPA transcends the boundaries of the ministerial exception." Shukla v. Sharma, 2009 WL 10690810, at *7 (E.D.N.Y. Aug. 21, 2009) (Pollak, M.J.), report and recommendation adopted, No. 07-CV-2972 (CBA), 2009 WL 3151109 (E.D.N.Y. Sept. 29, 2009).

III. The Causes of Action Are Not Barred by the Statute of Limitations

Finally, dismissal based on the statute of limitations is without merit. The Complaint alleges that Mr. Schneider performed labor coerced by the defendants in January 2013 and that he did not "escape" the cult until after January 11, 2013 (Compl. ¶¶ 134, 167), both within the applicable ten-year statute of limitations. In addition, the Complaint alleges that the defendants and others attempted and conspired to cause Mr. Schneider to perform labor at least until January 2013. (Compl. ¶¶ 174-81). Additionally, the claims are not barred by the statute of limitations because, based on the allegations described in part in the Complaint, equitable tolling applies until at least January 2013. See Cruz v. Maypa, 773 F.3d 138, 145 (4th Cir. 2014) (observing that equitable tolling may apply to a civil claim under the TVPA). Finally, because, as here, a statute of limitations defense can be highly fact dependent, "[a] motion to dismiss is often not the appropriate stage to raise affirmative defenses like the statute of limitations." Ortiz v. City of New York, 755 F.Supp.2d 399, 401 (E.D.N.Y. 2010).

Respectfully Submitted,

*Elizabeth Geddes*

Elizabeth Geddes
Nadia Shihata
Shihata & Geddes LLP
155 Water Street
Brooklyn, New York 11201

3