# Lex Lumina LLP

Rhett O. Millsaps II  |  rhett@lex-lumina.com  |  646.535.1137

February 13, 2025

**VIA ECF**

The Honorable Vera M. Scanlon
United States District Court, Eastern District of New York
225 Cadman Plaza East, 1214 South
Brooklyn, NY  11201

      Re:    *Schneider v. OSG, LLC et al.*, 22-cv-7686-DG-VMS;
             Defendants' Motion for Protective Order

Dear Judge Scanlon:

      We, together with Anna Skotko and Eva Posman, represent Defendants in the above-referenced action.  Pursuant to Fed. R. Civ. P. 26 and 45(d) and section III of Your Honor's Individual Practice Rules, we write respectfully to move this Court for a protective order (i) limiting the period for discovery in this case and (ii) quashing three nonparty subpoenas that Plaintiff Spencer Schneider intends to serve or has served on Defendants' banks and accountant (the "Subpoenas").  Schneider's dragnet Subpoenas—which are unlimited in time, despite Schneider's admission that he left Defendants' spiritual group 12 years ago, and which demand production of <u>all</u> of the banking and accounting records of Defendants OSG, LLC ("OSG") and Sharon Gans Horn and her estate (the "Estate") over several decades—are impermissibly overbroad fishing expeditions that seek information irrelevant and disproportionate to Schneider's claims and infringe OSG's and its non-party members' First and Fourteenth Amendment rights.

      *Background*

      On January 29, 2025, Schneider served notices of the Subpoenas to produce documents directed to two banks and an accounting firm used by OSG, Sharon Gans Horn, and her Estate since around 2004.  Declaration of Rhett O. Millsaps II dated February 13, 2025 ("Millsaps Decl.") ¶ 2, Ex. A.  Like the non-party subpoenas quashed by Your Honor on September 13, 2023, the Subpoenas are wildly overbroad and "intrusive" of Defendants' and OSG's non-party members' "First Amendment free exercise and association" rights—particularly because they seek production of voluminous transaction records that would identify OSG's non-party members, whom Schneider has a history of harassing over the last 12 years.  *See id.* ¶ 3, Ex. B at 16:24-17:13; Declaration of Gregory Koch dated February 13, 2025 ("Koch Decl.") (describing harassment); Millsaps Decl. ¶ 4, Ex. C.  The Subpoenas contain no time limitation and demand production of <u>all</u> records going back decades from the present, including the last 12 years when Schneider had no part in OSG.  Specifically, the Subpoenas to the banks demand "all Checks," "all monthly statements," "all Currency Transaction Reports," and documents sufficient to show "all Wire transactions" and "all ACH transactions."  Millsaps Decl., Ex. A at 9-11, 18-20.  The Subpoena to the accounting firm demands production of "a copy of [the firm's] File concerning" OSG, Gans Horn, and the Estate.  *Id.* at 26.

Defendants notified Schneider that they would move for a protective order and to quash the Subpoenas unless Schneider could present compelling reasons supported by case law for his dragnet requests or the parties could come to a reasonable agreement to limit them. *Id.* ¶ 5, Ex. D at 4. Schneider's counsel responded that Defendants did not have standing to challenge the Subpoenas and that their unlimited and sweeping requests were justified because Schneider seeks punitive damages and must prove that OSG was a for-profit venture as part of his TVPRA claims. *Id.* at 3. Defendants' counsel explained that OSG and the Estate would produce information regarding their current net worth (as requested in Schneider's requests for production to Defendants) and proposed that Schneider withdraw the Subpoenas in exchange for production of OSG's and Gans Horns' tax returns from 2003-2013, which could be used to show whether OSG and Gans Horn were engaged in a for-profit venture during the years relevant to Schneider's claims. *Id.* at 1-2. Schneider refused Defendants' proposal and refuses to withdraw the Subpoenas or limit them in any way. *Id.* at 1.

*Argument*

While generally "only a subpoena's recipient may challenge it," OSG and the Estate have standing to challenge the Subpoenas because they have privacy interests in the bank and other financial records sought by the Subpoenas. *State Farm Mutual Auto. Ins. Co. v. Khait*, 21 Civ. 6690 (FB) (VMS), 2023 WL 6541583, at *2 (E.D.N.Y. Sept. 26, 2023) (Scanlon, M.J.) (citing *Sky Med. Supply Inc. v. SCS Support Claim Servs., Inc.*, No. 12 Civ. 6383 (JFB) (AKT), 2017 WL 1133349, at *8 (E.D.N.Y. Mar. 24, 2017) (collecting cases)); *In re Rule 45 Subpoena Issued to Cablevision Systems Corp. Regarding IP Address 69.120.35.31* ("*Cablevision*"), No. MISC 08–347(ARR)(MDG), 2010 WL 2219343, at *4 (E.D.N.Y. Feb. 5, 2010). Moreover, OSG has standing as an expressive association and/or spiritual organization to protect its members' privacy and constitutional interests, which are implicated by the Subpoenas' demands for copies of all checks and other transaction records that would compel disclosure of the identities of all of OSG's non-party members who paid OSG electronically or by check. *Hunt v. Wash. State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977); *Federal Election Com'n v. Larouche Campaign*, 817 F.2d 233, 234-35 (2d Cir. 1987); *Dornan v. Sanchez*, 978 F. Supp. 1315, 1324 (C.D. Cal. 1997) ("There is at least the potential for a violation of the constitutional rights of [an organization's] members when the organization's records are subpoenaed") (citing *Hunt*). Finally, even if OSG and the Estate "lack[] standing to challenge [the Subpoenas] on relevance or proportionality grounds, 'the [c]ourt may nevertheless exercise its inherent authority to limit irrelevant or non-proportional discovery.'" *Khait*, 2023 WL 6541583, at *2-3 (Scanlon, M.J.) (citation omitted) (granting motion by non-recipient to quash bank subpoena because it "was overbroad and overly invasive of [movant's] privacy interests under both Rules 26 and 45").

As an initial matter, Defendants respectfully request that the Court exercise its discretion under Rule 26 and limit all discovery to the time period relevant to Schneider's claims in this case—December 19, 2003 (when a civil cause of action under the TVPRA was created),[1] to January 10, 2013 (the latest date on which Schneider alleges he left OSG (Compl. ¶¶ 134-35))—except for (1) non-privileged documents and communications after 2013 that reference an opposing party, this action, or

---

[1] *Wang v. Enlander*, 17 Civ. 4932 (LGS), 2018 WL 1276854, at *3 (S.D.N.Y. Mar. 6, 2018) ("violations of § 1589 and § 1590 cannot be based on conduct that occurred before December 19, 2003," when Congress created a private right of action under the TVPRA).

the subject matter of the parties' claims or defenses, (2) evidence sufficient to show OSG's and the Estate's present net worth,[2] and (3) evidence concerning Schneider's income, net worth, employment, and mental health in the two years after he left OSG.[3] Without such a time limitation by the Court, the parties will be repeatedly litigating this issue throughout discovery with regard to discovery requests, future third-party subpoenas, and many depositions to come. *See Khait*, 2023 WL 6541583, at *3 (quashing subpoenas not reasonably limited in time); *Bistline v. Snow Christensen & Martineau, P.C.*, Case No. 2:16-cv-788 TS, 2020 WL 4430466, at *3-*5 (D. Utah July 31, 2020) (explaining, "As a starting point…any discovery should be limited in time by [TVPRA] Plaintiffs' own allegations" and "order[ing] Plaintiffs to redraft their discovery requests in harmony with the aforementioned principles, including limiting the time frame and subject of such discovery"); Fed. R Civ. P. 26(b)(2)(C)(iii) (explaining that the Court "must limit the frequency or extent of discovery" if the Court determines that proposed discovery is outside the scope permitted by Rule 26(b)(1)).

Discovery into OSG's financial records and operations in the 12 years since Schneider left the group to the present would be a fishing expedition into material that is irrelevant and/or grossly disproportionate to Schneider's claims, intrusive of Defendants' constitutional rights, and designed to harass OSG and its members. The Court should give no credence to an argument that Schneider needs such discovery because more than a decade has passed since he left OSG. Schneider could have brought his present claims in 2014, the year after he alleges he left OSG, when instead he (as a federal litigator and with assistance of counsel) threatened to sue OSG in a class action for money damages for operating an unlicensed educational institution in violation of, *inter alia*, New York Education Law. After OSG's counsel responded that the claims were frivolous, Schneider simply walked away from the matter and never filed the suit. Koch Decl. ¶ 3; Millsaps Decl. ¶ 6, Ex. E. Schneider then spent the ensuing eight years "protesting" OSG and harassing the group's members while publishing a blog, articles, and a book about his allegations in this case. Koch Decl. ¶¶ 2-10; Millsaps Decl. ¶ 4, Ex. C. He chose to wait 10 years after leaving the group to file this action as an afterthought following a blitz of public appearances to promote his book in the fall of 2022. Millsaps Decl. ¶ 7, Ex. F at ¶¶ 1-4.

Moreover, Schneider's conduct between 2014-2022 forecloses any reasonable argument for equitable estoppel regarding the applicable statute of limitations in this case. The only basis that Schneider alleges for his TVPRA claims that occurred in the 10 years prior to Schneider filing this action on December 16, 2022, is that he attended class "in or about early January 2013," and, "[a]s he had for all prior Classes, SCHNEIDER and other Students set up the room where Class was held and cleaned up the room after Class ended." Compl. ¶ 134. In his book, however, Schneider states that he never attended an OSG class or event after OSG's December 11, 2012, Christmas class. Millsaps Decl. ¶ 7, Ex. F ¶¶ 112-13; Compl. ¶ 162. Defendants intend to move for summary judgment based on the TVPRA's 10-year statute of limitations, but in any event a time limitation of December 2003-January 2013 for discovery is more than sufficient for Schneider to prove his claims to the extent they are not time-barred.

Defendants respectfully request that the Court also exercise its inherent authority under Rule

---

[2] *See, e.g., Bryant v. Allied Acct. Servs., Inc.*, No. CV 05-5565(JBW)(ARL), 2006 WL 2620376, at *2 (E.D.N.Y. Sept. 13, 2006).

[3] Schneider alleges that he suffered financial loss and was suicidal after leaving OSG in 2013. Compl. ¶ 170.

26 and quash the Subpoenas because they are fishing expeditions that sweep in a large amount of irrelevant and/or disproportionate information and infringe Defendants' and OSG's non-party members' constitutional rights. OSG's and Gans Horn's full bank and accounting records are not relevant to the crux of Plaintiff's claims, *i.e.*, whether Defendants used threats or fear of serious harm to obtain forced labor from Plaintiff, and demands for their production are disproportionate to Schneider's stated need to prove that OSG was a for-profit venture—though Schneider recently told the Court that he "does not need to prove that OSG was a 'venture'" for his TVPRA claims. ECF No. 69 at 2. Defendants do not dispute that OSG received payments from its members or that Gans Horn received payment for leading the organization. Defendants' offer to produce OSG's and Gans Horn's tax returns would be more than sufficient to determine whether OSG was a for-profit venture.

More importantly, the Court should quash the Subpoenas because their demands for copies of <u>all</u> checks and electronic payments received by OSG would compel disclosure of the identities of individual OSG members who are not a party to this case. This would have a profound chilling effect on Defendants' and OSG's members' freedom of association guaranteed by the First and Fourteenth Amendment. *See Larouche Campaign*, 817 F.2d at 234-35; *Cablevision*, 2010 WL 2219343 at *7 ("because a court order invoked by private litigants constitutes state action, Prospect's attempt to utilize the subpoena power is subject to review by this Court for consideration of the First Amendment concerns raised by Doe"). Any assertion by Schneider that OSG was not an expressive association and/or spiritual organization protected by the First and Fourteenth Amendments is not credible at this point. Schneider has repeatedly and expressly admitted in publications and recorded interviews that OSG is a spiritual organization that he and its other members believed improved their lives, and he has described the specific aspects of OSG that show that it is an expressive association and a religious group for purposes of the First Amendment. ECF No. 72 at 1-2; Millsaps Decl. ¶ 7, Ex. F ¶¶ 8-38, 55, 60, 63, 66, 70, 74, 121, 125, 140, 142. Additionally, even if Schneider proved that OSG operated as a for-profit venture, that would not diminish its constitutional protections for free exercise and association. *Boy Scouts of America v. Dale*, 530 U.S. 640, 650 (2000) (It "seems indisputable that an association [with a 'general mission'] that seeks to transmit…a system of values engages in expressive activity."); *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 714-16 (2014) (holding that the First Amendment and RFRA protect a for-profit corporation's free exercise rights); *Green v. Miss United States of America, LLC*, 533 F. Supp. 3d 978, 991-96 (D. Or. 2021), *aff'd on other grounds*, 52 F.4th 773 (9th Cir. 2022) (ruling that for-profit beauty pageant operator was a protected expressive association because the pageant operator was "predominantly engaged in expressive activity" since the "record adequately supported" its claims that "expression [was] a significant and necessary component of its activities, and it [sought] to control the content of expression in those activities").

Particularly given Plaintiff's history of harassing OSG's members and attempting to generate public opprobrium against them, Plaintiff cannot demonstrate a compelling need for OSG's transaction records with non-party members that would outweigh the chilling effect of compelled disclosure. *See N.A.A.C.P. v. Alabama*, 357 U.S. 449, 462 (1958) ("Inviolability of privacy in group association may in many circumstances be indispensable to preservation of freedom of association, particularly where a group espouses dissident beliefs"); *Larouche Campaign*, 817 F.2d at 234-35.

For the foregoing reasons, Defendants' respectfully request that the Court issue a protective order (i) limiting the period for discovery in this case to December 19, 2003, to January 10, 2013, with the exceptions noted above and (ii) quashing the Subpoenas.

                                          Respectfully,

                                          /s/ *Rhett O. Millsaps II*
                                          Rebecca Tushnet

                                          Anna M. Skotko
                                          Skotko Law PLLC

                                          *Counsel for Defendants*

                                          Eva H. Posman
                                          Law Office of Eva H. Posman

                                          *Co-Counsel for Defendants OSG and the Estate*

cc:  All Counsel of Record (via ECF)