

110 West 40th Street, Ste. 1003
New York, New York 10018
www.shihatageddes.com
646-974-1143

March 14, 2025

The Honorable Vera M. Scanlon
United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    *Spencer Lee Schneider v. Odyssey Study Group LLC, et al.*
               Civil Docket No. 22-07686 (DG) (VMS)

Dear Judge Scanlon,

      Plaintiff Spencer Schneider respectfully submits this letter in opposition to Defendants' motion to compel him to identify the individuals on whose testimony he intends to rely to support his claims. ((ECF No. 85) ("Defs. Ltr")). Unsurprisingly, Plaintiff is the primary fact witness. He will describe in detail the plan, pattern and scheme Defendants employed to recruit him into their organization (hereinafter, "OSG") and thereafter compel him to perform labor, as detailed in Plaintiff's 51-page Verified Complaint. Beyond that, Plaintiff has not identified the individuals on whose testimony he intends to rely at summary judgment or at trial, and requiring Plaintiff to generate such a list of individuals – prior to even having party witness depositions – is unreasonable and would unnecessarily interfere with his right to sufficient time to craft his trial strategy. Moreover, such a list is not discoverable given that it would constitute attorney-work-product to which Defendants are not entitled.

**BACKGROUND**

      Plaintiff's initial disclosures list 94 individuals who, pursuant to Fed. R. Civ. P. 26(a), are "likely to have discoverable information" that he may "use to support [his] claims or defenses." 23 of those individuals are cross-listed on Defendants' initial disclosures. And for nearly all of those individuals, Defendants have listed *their counsel's law firm* as the contact, implying that those individuals are in ready contact with Defendants' counsel. Indeed, it would be alarming if counsel for OSG presented themselves as the contact for these witnesses without their consent.

      Plaintiff sought to proceed with document discovery shortly after he initiated his lawsuit, but Defendants moved for a stay of discovery and the Court granted it pending the resolution of Defendants' motion to dismiss. The stay was lifted on October 28, 2024. Since then, Plaintiff has diligently moved forward with his lawsuit. Between November 2024 and January 2025, the

parties met and conferred on multiple occasions in an attempt to narrow the issues in dispute.[1] Plaintiff produced documents on February 7, 2025 (over 14,000 pages), on February 21, 2025 (over 27,000 pages), and on March 10, 2025 (over 13,000 pages). In total, Plaintiff has produced 4,426 documents that exceed 55,000 pages in response to Defendants' demands.[2] In stark contrast, Defendants, relying on dubious categorical objections regarding scope and timeframe, have produced just 179 documents – fewer than 1,400 pages. With the exception of limited financial records, Defendants refuse to produce anything that does not contain Plaintiff's name.

Plaintiff's document production is fertile material for Defendants to identify deponents. For instance, Plaintiff has produced scores of text messages and emails with former OSG members where they recount harrowing memories of the manipulation they endured by Defendants; several affidavits (some signed, some in draft form) by former OSG members, in which they referenced OSG's abuse; Plaintiff's handwritten notes of phone calls with former members of OSG – most of whom were strangers to Plaintiff – who contacted Plaintiff; a document dated August 16, 2022 listing individuals characterized as "Witnesses" outlining the information they possessed including whether they were "likely to cooperate" in a matter against Defendants; and, in response to Defendants' interrogatory, Plaintiff disclosed the identities of individuals referenced in the Complaint. In light of these records, Defendants' contention that they are at a loss to identify witnesses to depose (Defs. Ltr. at 4) is disingenuous.

## DISCUSSION

It is well accepted that, during discovery, a party is typically not entitled to a witness list like the one Defendants seek. The "essential purposes" of the discovery procedures in the Federal Rules "are not necessarily achieved by requiring a party, in the absence of unusual circumstances, to list in advance the names of witnesses he intends to call upon the trial" and that "requiring a party to furnish such a list" may place such party "at unnecessary disadvantage[.]" *Fidelis Fisheries v. Thorden*, 12 F.R.D. 179, 180 (S.D.N.Y. 1952). In *Fidelis*, the court explained that initial disclosures, not a trial witness list, is the appropriate approach:

> [I]f the respondent received from the [plaintiff] . . . a statement of 'the identity and location of persons having knowledge of relevant facts,' without regard to whether or not his adversary planned to call all or any number of them upon the trial, respondent would be in a position to interview witnesses, obtain their testimony under the Rules, attempt to discover leads 'as to where evidence may be located' and use every facility for full and tho rough preparation for trial. The service of such a list, rather than one of proposed trial witnesses, serves to eliminate 'the 'sporting theory of justice.''

*Id*. The *Fidelis* court further noted the "inherent disadvantage to a party to compel him to state in advance of trial those witnesses he intends to call." *Id*. After listing numerous reasons why "an

---

[1] As the Court is aware, in late November 2024, Defendants sought leave to move for summary judgment before any discovery was exchanged. Plaintiff opposed in a filing on December 27, 2024. The Court denied Defendants' motion in an Order on January 23, 2025.

[2] Defendants suggest that Plaintiff's production reflects his "obsession with Defendants." Not so. Plaintiff has been undergoing psychiatric treatment for over a decade due to the serious harm Defendants caused through their plan, pattern and scheme to compel his labor over nearly 23 years; he remains determined to expose Defendants' conduct to protect others from enduring the same suffering he and so many others have endured.

experienced trial lawyer [may] dispense with a witness' testimony after first contemplating it" (*id*.), the court noted that such a list would place a litigant "in the position of explaining away the failure to call an announced witness when events subsequent to the service of the list warranted dispensing with his testimony, especially if the other party were to contend that he was misled and had relied upon his adversary to produce the witness at the time of trial." *Id.*; *see also Ladner v. Ladner*, 436 So. 2d 1366, 1372 (Miss. 1983) (appellant was not entitled to a list of trial witnesses because, among other reasons, "it could conceivably place an attorney in the difficult position of explaining away the failure to call an announced witness" and "counsel should be granted sufficient time to plan his trial strategy without interference during the early discovery stages") (citing *Fidelis Fisheries*, 12 F.R.D. at 179).

And while "unusual circumstances" may justify early disclosure of trial witnesses, those circumstances are not present here. In a transparent effort to exaggerate the circumstances in play, Defendants inflate to *150* the number of individuals who they claim Plaintiff proffers as potential witnesses. (Defs. Ltr. at 3 (referencing "these 150 individuals Schneider is likely to rely on for testimony to support his claims"; *id.* at 4 (suggesting Defendants would need to "locat[e] and interview[]" "the 150 individuals")). This number misstates the record. Plaintiff listed 94 names in his initial disclosures. The additional fifty-plus individuals appears to include individuals who Plaintiff listed in responding to Defendants' interrogatories. But Plaintiff does not suggest that those fifty-plus persons are among the individuals who he may rely on. Furthermore, Defendants have ready access to many of the individuals listed in Plaintiff's initial disclosures, as Defendants cross-listed many of the same witnesses on their initial disclosures and listed their counsel as the contact. What remains of Plaintiff's list of potential witnesses are approximately 70 individuals with whom Defendants may not have ready contact. But for many of them, Plaintiff has provided contact information and/or disclosed their written communications about manipulation they endured at the hands of the Defendants. Plaintiff submits that this list does not present "unusual circumstances" to justify deviating from the well-accepted normal course of discovery. *Cf. In re Veeco Instruments, Inc. Sec. Litig.*, No. 05 MD 01695(CM)(GAY), 2007 WL 724555, at *1 (S.D.N.Y. Mar. 9, 2007) (finding burden of "identifying [3] confidential witnesses from a list of [55] persons identified on initial disclosures was not an 'unmanageable number' of persons and thus, did not present 'undue hardship[.]'").

Defendants' claim that moving forward with depositions is "impossible" (Defs. Ltr. 2) is meritless. Defendants may of course depose Plaintiff (and have offered no reason why they have not yet noticed that deposition) or depose the numerous individuals included in Plaintiff's pleadings (the names of which Plaintiff has already supplied to Defendants). Further, prior to taking party depositions, it is premature for Plaintiff to assess what non-party witnesses he plans to rely on at trial because the scope of facts in dispute (and on what grounds they are disputed) is unknown. Plaintiff should be afforded sufficient time to plan his trial strategy without interference during these early discovery stages.

Moreover, Defendants' heavy reliance on *U.S. ex rel. Integra Med Analytics, LLC v. Laufer*, No. 17-cv-9424-CSJCM, 2023 WL 3203912, at *1 (S.D.N.Y. May 2, 2023), is misplaced. (*See* Defs. Ltr. at 3-4). *Laufer* is a False Claims Act case where the government alleged defendants engaged in defrauding the government. Defendants demanded the government's witness list to, presumably, attempt to determine what witnesses were aware of

3

potentially fraudulent conduct. There, the wrongdoing was an alleged course of conduct by Defendants that would be proven in part by some set of witness testimony. Here, by contrast, the claim is that Defendants subjected *Schneider* to violations of the trafficking laws. At trial, Defendants will need only defend whether their conduct *as to Schneider* violated the law. Therefore, Schneider is the key witness who they need to depose, and they can elicit from him who he believes witnessed the conduct that would support his allegations of liability. The *Laufer* defendants could not do that because the wrongdoing there was an alleged widespread fraud; it was not, as here, conduct centrally focused on harming a single deposable individual. And while Schneider may set forward witnesses at trial to discuss OSG's operation, conduct, and treatment generally, that kind of witness does not meet the "substantial need" element. *See Laufer*, 2023 WL 3203912, at *5 (in holding "substantial need" was shown, the court noted that "[a] substantial need for work product materials exists where the information sought is essential to the party's defense, is crucial to the determination of whether the defendant could be held liable for the acts alleged, or carries great probative value on contested issues") (*quoting Nat'l Cong. for Puerto Rican Rts. v. City of New York*, 194 F.R.D. 105, 110 (S.D.N.Y. 2000)).

Nor is disclosure permitted under Fed. R. Civ. P. 26(b)(3), which authorizes *only* discovery of "documents and tangible things" that are litigation work product and only *only* if "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3). Defendants cannot meet this standard. First, neither Plaintiff, nor his counsel, has created a "document" or another "tangible thing" listing the individuals whom he intends to rely upon on summary judgment or at trial. Therefore the discovery Defendants propound may not be granted under this rule. *Wilson v. City of New York*, No. 06-cv-229 (ARR)(VVP), 2009 WL 10705937, at *2 (E.D.N.Y. Jan. 20, 2009) ("the court ordinarily looks first to Rule 26(b)(3) of the [FRCP] in analyzing claims of work product protection[] [but] [t]hat rule [] has no application to the disputes here because by its express terms that Rule affords work product protection only to "documents and tangible things").[3] Instead, because Defendants seek intangible mental impressions of counsel (*i.e.*, who Plaintiff's counsel now intends to rely on at the evidentiary stages of the case), disclosure is even more strictly limited under a broad common law work product doctrine. *See Hickman v Taylor*, 328 U.S. 495, 510-11 (1947); *see also DDK Hotels, LLC v. Williams-Sonoma, Inc.*, No. 19-cv-226-ILGCLP, 2023 WL 4824024, at *6 (E.D.N.Y. Mar. 17, 2023) (noting that "the work product doctrine as articulated in *Hickman* is broader than Rule 26(b)(3)" and citing, with approval, case law "holding that under the common law work product doctrine as articulated in *Hickman*, intangible work product also containing an attorney's analysis made in anticipation of litigation is immune from discovery") (citations omitted). In short, Defendants' motion to compel disclosure of Plaintiff's counsel's strategy and case development should be rejected; the circumstances here do not merit such invasive and unusual access in a civil litigation.

---

[3] Second, even if such a document existed, Defendants are unable to show, as they must, that they face an "undue hardship" to obtain the substantial equivalent information by other means. Defendants can identify relevant witnesses by reviewing Plaintiff's extensive document production and by deposing Plaintiff and others named in the Complaint. *See, e.g.*, *Gucci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 80–81 (S.D.N.Y. 2010) ("No substantial need exists where a party can obtain the information it seeks through discovery devices such as interrogatories or deposition testimony"); *Xerox v. I.B.M. Corp.*, 64 F.R.D. 367, 382 (S.D.N.Y. 1974) (plaintiff required to depose witness to show inability to obtain substantial equivalent of information sought prior to obtaining work product).

Respectfully submitted,


/s/ Elizabeth Geddes
 Elizabeth A. Geddes (NY Reg. #4348470)
Nadia I. Shihata (NY Reg. #4253886)
Shihata & Geddes LLP
155 Water Street
Brooklyn, New York 11201
(646) 974-1143
liz@shihatageddes.com
nadia@shihatageddes.com

Hugh Sandler (NY Reg. # 4712584)
Krantz & Berman LLP
747 Third Avenue, 32nd Floor
New York, NY 10017
hsandler@krantzberman.com


Attorneys for Plaintiff Spencer Lee Schneider