

**Shihata & Geddes LLP**

110 West 40th Street, Suite 1003
New York, New York 10018
www.shihatageddes.com
646-974-1143

April 9, 2025

**BY ECF (*Submitted Under Seal*)**

The Honorable Vera M. Scanlon
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

    Re:    *Schneider v. OSG, LLC, et al.*, Civil Docket No. 22-7686 (DG)(VMS)

Dear Judge Scanlon,

    Plaintiff respectfully submits this letter in opposition to Defendants' letter dated April 6, 2025 seeking to set aside the work product protection that applies to a draft complaint. (ECF No. 95). Draft versions of Plaintiff's complaint prepared by his attorneys against Defendants (the "Draft Complaint") are classic work product. Plaintiff sharing that Draft Complaint as an attachment to an email titled "Privileged and confidential work product" and sent to a confidant, Larry Swets, did not waive the work product protection. Because Plaintiff's email to Mr. Swets did not "substantially increase" the likelihood that the Draft Complaint would end up in the hands of adversaries, Defendants' waiver argument is foreclosed. Indeed, supporting the absence of an increased likelihood, is the telling fact that sharing it with Mr. Swets did not lead to his adversaries gaining access to it. Nor have Defendants sustained their burden to show any other basis to disturb the work product protection that applies here. Simply put, a client sharing his attorneys' draft complaint on a "confidential" basis with a close confidant falls well within conduct that the work product doctrine is designed to protect. Defendants' motion should be denied.

### DISCUSSION

    An attorney's draft of a complaint is classic work product. *See Mitura v. Finco Servs., Inc.*, 347 F.R.D. 299, 301 (S.D.N.Y. 2024) ("attorney's drafts of an affidavit or declaration are classic work product") (citation and quotations omitted). Defendants appear to concede that the Draft Complaint is work product, but argue that Plaintiff waived the privilege by sharing it with Mr. Swets. However, "[u]nlike the rule for the attorney-client privilege, the protection afforded work product is not waived merely because the material is disclosed to a third party." *Bank of*

*Am., N.A. v. Terra Nova Ins. Co.*, 212 F.R.D. 166, 169 (S.D.N.Y. 2002). "Most courts that have analyzed the question whether a party has waived work product protection over documents by disclosing them to third parties have found waiver only when the disclosure 'substantially increased the opportunities for potential adversaries to obtain the information.'" *United States v. Stewart*, 287 F. Supp. 2d 461, 468 (S.D.N.Y. 2003) (quoting 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice & Procedure § 2024 (1994); *In re Copper Market Antitrust Litig.*, 200 F.R.D. 213, 221 n. 6 (S.D.N.Y. 2001); *In re Grand Jury Subpoenas Dated December 18, 1981 and January 4, 1982*, 561 F. Supp. 1247, 1257 (E.D.N.Y. 1982)). See also *N.Y. Times Co. v. United States Dep't of Just.*, 939 F.3d 479, 494 (2d Cir. 2019) ("[a] party waives the work product protection by taking actions inconsistent with . . . its purpose, such as disclosing work product to its adversary, or by placing privileged documents 'at issue' in a litigation.") (internal citations omitted); *Bowne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 479 (S.D.N.Y. 1993) ("disclosure simply to another person who has an interest in the information but who is not reasonably viewed as a conduit to a potential adversary will not be deemed a waiver of the protection of the rule") (collecting cases); *id.* at 480 ("the disclosure of work-product to another person with a shared interest in the material, even if not a litigation interest, does not waive the privilege unless the circumstances of the disclosure created a significant possibility that the material would ultimately be disclosed to an adversary"). "This approach recognizes that the purpose of the work product doctrine is to protect material from an opposing party in litigation, not necessarily from the rest of the world generally." *Stewart*, 287 F. Supp. 2d at 468-69 (citation omitted).

Here, almost 36 hours before this lawsuit was commenced by filing a final version of a complaint against Defendants, Plaintiff sent the Draft Complaint to Mr. Swets, who Plaintiff has described as a valued confidant and who he understood would keep the Draft Complaint and their attendant communications confidential. (Decl. ¶¶3-7). Notably, there is no reason to believe that Mr. Swets ever provided the privileged document to anyone or did anything to undermine the trust Plaintiff instilled in Mr. Swets.[1] *Cf. Lapaix v. City of New York*, No. 13CV07306LGSSN, 2014 WL 11343854, at *5 (S.D.N.Y. Aug. 15, 2014) ("The case law suggests, however, that this standard applies when the trustworthiness of the third party or the third party's allegiance to the disclosing party can be challenged. Thus, the standard applies where a third party actually provided the information to an adversary, or where it is alleged that there is some likelihood of the third party intentionally disclosing the information to an adversary") (citations omitted). Under those circumstances, Plaintiff did not substantially

---

[1] Mr. Millsaps, counsel for Defendants, included in his Declaration that he spoke with Mr. Swets who "confirmed that he has no interest in this case or any other common legal interest with Schneider"; "that he is on good terms with ▮▮▮▮▮▮▮▮" and that he "would be an independent witness if called to testify in this matter." Putting aside that Defendants have not offered any non-hearsay evidence for anything Mr. Swets said, Mr. Millsaps' Declaration does not support a conclusion that Mr. Swets was not a confidant of Plaintiff's or that sending the Draft Complaint to him "substantially increase[d]" the likelihood that it would be shared with anyone – much less Plaintiff's adversaries. Further, it offers no reason to not credit Plaintiff's sworn statement that he believed that he had a close personal relationship with Mr. Swets, that he did not believe that Mr. Swets would ever disclose information that Plaintiff identified as confidential and that, as far as Plaintiff is aware, Mr. Swets never disclosed the Draft Complaint to anyone. (Decl. ¶¶3-7).

2

increase the likelihood that the Draft Complaint would make its way to his adversaries and thus, he did not waive the privilege. *See id.* at *4-*5 (no waiver where plaintiff sent work product to individuals who were "friend[s] and long-time assistant[s]"); *United States v. Stewart*, 287 F. Supp. 2d 461, 468–69 (S.D.N.Y. 2003) (no waiver where plaintiff disclosed work product to a family member). *Cf. In re Circle K Corp.*, 199 B.R. 92, 100 (Bankr. S.D.N.Y. 1996), aff'd, No. 96 CIV. 5801 (JFK), 1997 WL 31197 (S.D.N.Y. Jan. 28, 1997) ("to effect a forfeiture of work product protection by waiver, disclosure must occur in circumstances in which the attorney cannot reasonably expect to limit the future use of the otherwise protected material.") (citing *Doe v. United States*, 662 F.2d 1073, 1081 (4th Cir. 1981)).

*Ricoh Co., Ltd. v. Aeroflex, Inc.*, 219 F.R.D. 66, 70 (S.D.N.Y. 2003), a case cited by Defendants, is inapposite. Unlike in *Ricoh*, where as part of his legal strategy, counsel for a party shared his work product with an individual who was "likely" to be called "as an independent witness" (*id.* at 70), Plaintiff shared the Draft Complaint with an individual with whom he had a close personal relationship and not in any way to prepare for or gain a strategic advantage with respect to the litigation. (Decl. ¶3). Furthermore, unlike in *Ricoh*, Plaintiff did not perceive Mr. Swets to be a witness in this matter (Decl. ¶8). While Defendants summarily claim that Mr. Swets "obviously is a material witness," they have not sufficiently explained how his being a witness would lead to a substantial increase in the likelihood that the Draft Complaint would make its way to Defendants. It is certainly not enough to simply deem someone a witness; if it did, anyone seeking a privileged document could simply add him or her to their witness list, as Defendants did here. Nor is it of any moment, as Defendants suggest, that Plaintiff did not generally mark his communications with Mr. Swets as confidential given the parameters of the Confidentiality Order, which did not allow for a confidentiality designation solely based on a close personal relationship or a belief that the recipient would not take steps to disclose a document to Defendants. In any event, Plaintiff did mark the document at issue on this motion as "Privileged and confidential work product" (Decl. ¶6), thereby demonstrating his contemporaneous belief that his communication with Mr. Swets merited work product protection.

Defendants' next argument – that disclosure is warranted under the crime fraud exception – is frivolous and a thinly-veiled attempt to intimidate Plaintiff and his counsel by recklessly defaming them. Put simply, Plaintiff and his counsel have acted in good faith in commencing this lawsuit and aside from Defendants' unsupported (and false) assertions, Defendants offer no support for their inflammatory claim that Plaintiff and/or his counsel has committed a fraud on the Court. First, Plaintiff's statement in the Verified Complaint that he last attended an OSG class "in or about early January 2013" was made in good faith based on Plaintiff's best recollection when the complaint was filed on December 16, 2022. (Decl. ¶¶9-10). Defendants argue that because ███████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████ Such a leap cannot be made. Counsel's repeated assertion that Plaintiff and/or his counsel deliberately lied to the Court is flagrantly reckless and unwarranted. As such,

3

Defendants fall woefully short of sustaining their burden in showing that "that there is probable cause to believe that a crime or fraud has been attempted or committed and that the communications were in furtherance thereof." *In re Richard Roe, Inc.*, 68 F.3d 38, 40 (2d Cir. 1995). Defendants also cannot establish the second prong – that the document was in furtherance of a fraud – given that █████████████████████████████████████████████ █, a far cry from perpetuating a fraud as defendants claim. *Richard Roe, Inc.*, 68 F.3d at 40 (2d Cir. 1995) ("the crime-fraud exception applies only where there is probable cause to believe that the particular communication with counsel or attorney work product was intended in some way to facilitate or to conceal the criminal activity") (citations omitted). Defendants' argument should be summarily rejected.

In any event, the statement as to the date of Plaintiff's last class is not dispositive as to timeliness of the lawsuit. Regardless of when Mr. Schneider last attended a class, Mr. Schneider did not escape OSG until, at the earliest, January 10, 2013, the day that he met the flight attendant on the beach, and the day that an OSG leader called Mr. Schneider to confront him about missing class. (Decl. ¶12; Compl. ¶¶135, 166). Judge Donnelly already found in this case that Plaintiff's claims are timely by virtue of equitable tolling. *See* Mem., Decision & Order, dated 3/27/2024 (ECF No. 47) ("3/27/2024 Order"), at 9 n.3 ("The plaintiff also argues that the statute of limitations should be equitably tolled on the theory that OSG's hold over him prevented him from filing suit until he left the organization. Courts have credited similar explanations in finding equitable tolling at the motion to dismiss stage, *see, e.g., Hongxia Wang v. Enlander*, No. 17-CV-4932, 2018 WL 1276854, at *4 (S.D.N.Y. Mar. 6, 2018), *so the plaintiff's claims are also timely* on this ground.") (emphasis added). And even if equitable tolling did not apply, Judge Donnelly also found that the conspiracy by the Defendants continued until at least January 10, 2013, which for the Court formed an independent basis to find his claims timely. *See* 3/27/2024 Order at 9-10 ("Moreover, the plaintiff's claims are based on a conspiracy theory. The plaintiff maintains that the conspiracy began when he joined OSG and continued until January 13, 2013 [sic], when a conspirator called him by telephone and reprimanded him for missing a class, as part of the conspiracy. (ECF No. 1 ¶ 135, 167.) *Thus, the plaintiff's claims are timely. See Doe v. Indyke*, 465 F. Supp. 3d 452, 462 (S.D.N.Y. 2020) (finding a TVPA claim based on a conspiracy timely).") (emphasis added).

Finally, Defendants cannot sustain their burden in showing that they are entitled to disclosure of the Draft Complaint, *i.e.*, privileged work product, under Fed. R. Civ. P. 26(b)(3). To make such a showing, Defendants must show that they have a "substantial need for the materials to prepare its case" and "cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii). They can do neither. They will have the opportunity to depose Mr. Schneider and may ask him when he last attended an OSG class and confront him with the statements in his book that he last saw his classmates in "late December 2012."

Respectfully submitted,

*Elizabeth Geddes*

Elizabeth Geddes
Shihata & Geddes LLP

cc: Counsel for Defendants (by ECF)