Lex Lumina LLP

Rhett O. Millsaps II | rhett@lex-lumina.com | 646.535.1137

July 31, 2026

**VIA ECF**
The Honorable Diane Gujarati
U.S. District Court, E.D.N.Y.

**Re: *Schneider v. OSG, LLC et al.*, 22-cv-7686-DG-VMS**

Dear Judge Gujarati:

Pursuant to Fed. R. Civ. P. 56 and Rule III(A) of the Court's Individual Rules, Defendants respectfully request a conference regarding their (i) anticipated summary-judgment motion and (ii) previously noticed Rule 11 sanctions motion referred to Judge Scanlon. ECF Nos. 33-34. Defendants' Rule 56.1 Statement of Material Facts ("SF") and accompanying evidence are filed herewith.

Two years of discovery have confirmed that Schneider's claims under the Trafficking Victims Protection Act, 18 U.S.C. §§ 1589 & 1590 (the "TVPA"), and related conspiracy claims are frivolous and that Schneider, an experienced litigator, deliberately included materially false statements and omissions in his Verified Complaint. ECF No. 1. The voluminous, undisputed evidence—including Schneider's own testimony and prior statements, the testimony and records of Schneider's own proffered witnesses and former classmates, and the opinions of expert witnesses—supports summary judgment for Defendants and sanctions against Schneider because: (1) Schneider has no claim under the statute's plain terms; (2) applying the TVPA in the manner urged by Schneider is foreclosed by the First and Fourteenth Amendments of the U.S. Constitution; (3) Schneider's claims are barred by the 10-year statute of limitations; and (4) Schneider filed this baseless case to harass Defendants and promote his book.

**1.** Schneider cannot meet the necessary elements for his claims under the plain terms of the TVPA, which proscribes obtaining labor or services using threats or fear of serious harm. 18 U.S.C. § 1589. First, while the TVPA does not define "labor or services," the work that Schneider says he performed—*e.g.*, helping set up for and attending classes, performing chores during a one-week annual summer retreat in Montana, or helping prepare for the annual Christmas Party (Compl. ¶¶ 132, 146, 159)—cannot constitute coerced "labor or services" under the TVPA. Rather, they were voluntary components of spiritual practices espoused by the Fourth Way school administered by Defendants (hereinafter, "School"), engaged in for spiritual benefits and personal development. SF ¶¶ 7, 16-19, 53-65, 82-85. None of School's current or former members considered them to be labor or services or expected financial compensation for engaging in them. *Id.* ¶¶ 258-265.

Second, Defendants did not obtain Schneider's labor or services "by means of" threats or fear of serious harm. *See Headley v. Church of Scientology Intern.*, 687 F.3d 11731, 1179-81 (9th Cir. 2012) (affirming dismissal of TVPA claims on summary judgment under plain terms of statute despite evidence of severe punishments and threats of excommunication); *Salem, et al. v. Mich. State Univ., et al.*, 19-cv-220, 2021 WL 1381149, *6 (W.D. Mich. 2021) (dismissing TVPA claims brought by doctoral students who alleged their academic advisor abused them and compelled them to provide unpaid or

severely underpaid, grueling labor and services to his unrelated company). None of School's current or former members, including Schneider and the witnesses he proffered, recalled being subjected to or witnessing threats for not volunteering or for breaking any purported rules of the group, which were not strictly enforced. SF ¶¶ 110-118, 213-257. Rather, Schneider and his classmates chose to participate in School's classes and activities based on perceived benefits. *Id.* ¶¶ 184-212. School's highly educated members paid to attend classes, maintained busy lives outside School, and were free to leave and discontinue their participation at any time. *Id.* ¶¶ 23-28, 89-109, 267-282.

The evidence indisputably supports the conclusion that Schneider maintained his agency and free will while participating in School. *Id.* ¶¶ 301-333. Throughout his time in School, Schneider made independent decisions (including running his own law practice, splitting time between his homes in the city and upstate or the Hamptons, traveling to visit family and go on vacations, and hiring a lawyer for his divorce from a teacher in School ("Student #1" in the Complaint)) and participated in independent activities (including events and committees for his son's private school, playing in a band, and exercise groups). *Id.* and ¶¶ 271-282. Schneider chose to let go of lucrative clients in favor of work with another member of School ("Student #2" in the Complaint) not out of fear but because he hoped to make more money doing so. *Id.* ¶¶ 272-277, 308. Schneider ultimately chose to leave School, like many members before him, by simply never returning to class. *Id.* ¶¶ 94-109, 320. He did so when he decided that School was no longer adequately benefitting him, following the breakdown of his marriage to Student #1 and his business relationship with Student #2. *Id.* ¶¶ 303-321.

Third, the harms that Schneider alleges that he might have faced if he left School earlier are not supported by evidence and "would not compel a 'reasonable person' of [his] 'background' to continue" his participation in School. *See*, *e.g.*, *Stillwell v. Fashion Nova, LLC*, 21-cv-7040 (GW), 2022 WL 2965394, *11 (C.D. Cal. 2022) (dismissing TVPA claim because a "reasonable person in [plaintiff's] circumstances would have: a) walked away from the relationship, b) filed a lawsuit/defended a lawsuit/counter-sued to enforce…her…rights, and/or c) found somebody else – given her skills and education – to employ and pay her for working"). Courts consider "the particular vulnerabilities of a person in [plaintiff's] position" and whether plaintiff's behavior was "objectively reasonable under the circumstances." *U.S. v. Rivera*, 799 F.3d 180, 186–87 (2d Cir. 2015). The verbal humiliation that Schneider says he feared in School would cause a reasonable person in his circumstances *to leave* School, not to stay, *Headley*, 687 F.3d at 1180, and is not actionable absent "a threat of force or serious harm." *Velez v. Sanchez*, 754 F. Supp. 2d 488, 498 (E.D.N.Y. 2010), *aff'd in part and rev'd in part*, 693 F.3d 308 (2d Cir. 2012). Schneider admitted that he did not fear that School's leadership would disseminate personal information about him *outside* School if he left, but only that they would gossip about him within the group. ECF No. 32-2 at 15 n.11. And Schneider's purported fear of shunning—undermined by his own prior statements and his request that members of School not contact him after he left (SF ¶¶ 163-174)—does not support his TVPA claims. *See Headley*, 687 F.3d at 1180 (a "church is entitled to stop associating with someone who abandons it" and "may also warn that it will stop associating with members who do not act in accordance with church doctrine.").

Fourth, there is no evidence that Defendants had the requisite scienter necessary for Schneider's TVPA claims. *See Tegete v. Maryknoll Sisters*, 20-cv-5023 (CS), 2023 WL 2504744, *10 (S.D.N.Y. 2023) (finding lack of requisite scienter where, "even if Plaintiff for some reason subjectively believed that she would be destitute if she returned to Tanzania, she has offered no plausible allegations as to why Defendant would share that view or, indeed, any evidence at all that Defendant

had the intent that § 1589 requires."). Nothing in the record suggests that any of the Defendants operated a scheme intended to cause Schneider to believe he would suffer serious harm if he left the group. On the contrary, the evidence shows that the individual Defendants, including now-deceased Sharon Gans Horn, sincerely believed in the spiritual ideas and practices of School. SF ¶¶ 354-380.

**2.** Applying the TVPA to School in the manner urged by Schneider here would violate bedrock constitutional protections and the Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000bb et seq., and is well outside of Congress's stated purposes in enacting the TVPA. *See* ECF Nos. 32-1 at 5-6, 19-22 & 32-3 at 6-9. At bottom, Schneider seeks to use the TVPA to punish School for teaching Fourth Way spiritual ideas and practices; for Schneider not achieving hoped-for spiritual and social benefits through participation in the group; and for limiting the group's membership to those who actively participate in its practices. This is anathema to the First and Fourteenth Amendments and would violate Defendants' associational rights (*see Schneider v. OSG, LLC*, 2025 WL 2647245 (E.D.N.Y. Sept. 15, 2025) (Scanlon, C.M.J.) and free-exercise rights, the ecclesiastical abstention doctrine, *see Watson v. Jones*, 80 U.S. 679 (1872), and the ministerial exception doctrine given Schneider's ministerial role in School. SF ¶¶ 284-288; *Headley*, 09-cv-3986 (DSF), 2010 WL 3157064, *3-6 (C.D. Cal. 2010), *aff'd on statutory grounds*, 687 F.3d 11731 (9th Cir. 2012).[1] As Prof. Stang of the Harvard Divinity School testified, "if we were to apply [Schneider's] complaint consistently, it would catch in its dragnet millions of people who participate in religious and spiritual communities. . .." SF ¶ 419. This is not a constitutionally tenable construction of the statute. *See Golb v. Attorney Gen.*, 870 F.3d 89, 103 (2d. Cir. 2017) ("'[I]f an otherwise acceptable construction of a statute would raise serious constitutional problems, and [ ] an alternative interpretation of the statute is 'fairly possible,' we are obligated to construe the statute to avoid such problems.'") (quoting *I.N.S. v. St. Cyr*, 533 U.S. 289, 299–300 (2001)).

**3.** Schneider's Complaint was filed outside the TVPA's 10-year statute of limitations and must be dismissed for that reason as well. 18 U.S.C. § 1595(c). The evidence establishes that Schneider left School in December 2012, not January 2013 as falsely alleged in the Complaint. For years before filing this case, Schneider consistently stated in his writings and communications that his last association with School was a class he attended in December 2012. SF ¶¶ 381-383, 388-390. The last class of December 2012 was held on December 11, 2012. *Id.* ¶¶ 386. There is no evidence that Schneider participated in anything connected to School after December 11, 2012. Thus, Schneider's Verified Complaint, filed on December 16, 2022, is time-barred—which he knew when he filed it.

**4.** The evidence shows that this lawsuit is the culmination of Schneider's decade-long harassment campaign against School and an explicit part of a plan to promote Schneider's book, published not long before he filed this case. SF ¶¶ 391-418. Schneider, a practicing attorney, intentionally included materially false statements and omissions in his Verified Complaint, directly contradicted by his own prior statements and deposition testimony. Defendants respectfully request that the Court consider and grant their sanctions motion alongside their summary-judgment motion.

---

[1] School's legal organization as a closely held LLC is immaterial to the application of these constitutional protections. *See Burwell v. Hobby Lobby Stores, Inc.* (2014) 573 U.S. 682, 706-707 (holding that closely held, for-profit companies are 'persons' whose First Amendment free-exercise rights are protected alongside their owners' rights); SF ¶ 50.

Respectfully submitted,

/s/ *Rhett O. Millsaps II*
Rebecca Tushnet

Anna M. Skotko
Skotko Law PLLC

*Counsel for Defendants*

Eva H. Posman
Law Office of Eva H. Posman

*Co-Counsel for Defendants OSG and the Estate*

cc: All Counsel of Record (via ECF)