KRANTZ & BERMAN LLP

Larry H. Krantz
Marjorie E. Berman
Hugh D. Sandler
Jerrold L. Steigman

Lisa A. Cahill
Rebecca S. Campbell
*Of Counsel*

Writer's E-mail
hsandler@krantzberman.com

**Corrected Version of ECF No. 165**

September 9, 2026

**VIA ECF**
The Honorable Diane Gujarati
U.S.D.C. E.D.N.Y.
225 Cadman Plaza East,
Brooklyn, New York 11201

**Re: *Schneider v. OSG, LLC, et al.*, No. 22-cv-7686 (DG)(VMS)**

Dear Judge Gujarati:

We respectfully respond to Defendants' July 31, 2026 letter (ECF No. 156) ("Def. Ltr.") requesting a pre-motion conference regarding filing motions for summary judgment and Rule 11.

This case is not suited for summary judgment. It turns on 13 present and former OSG members' testimony concerning the effect and severity of Defendants' conduct, including the compelled physical labor at a ranch in Montana, in two office suites in Manhattan, and elsewhere in New York. Plaintiff's 56.1 Response ("Pl. 56.1 Resp.") shows these witnesses' testimony to be in sharp conflict. And, because the evidentiary record has virtually *no* documents contemporaneous to the wrongdoing, the trier of fact must make witness credibility determinations to decide classic jury questions of Defendants' intent/the sincerity of their beliefs, Plaintiff's reasons for performing labor, and the reasonableness of those reasons. "[W]here subjective issues regarding a litigant's state of mind, motive, sincerity or conscience are squarely implicated, summary judgment would appear to be inappropriate and a trial indispensable." *Patrick v. LeFevre*, 745 F.2d 153, 159 (2d Cir. 1984).

Further, Defendants' *419*-paragraph Rule 56.1 statement "belies its summary judgment-worthy nature." *Hall v. N. Bellmore Sch. Dist.*, 55 F. Supp. 3d 286, 289 (E.D.N.Y. 2014) ("the 'kitchen sink' style of briefing by the parties—which includes a *193–paragraph* Local Rule 56.1 statement of facts, a *148–paragraph* counterstatement of facts, and over *4,000 pages* of exhibits— . . . belies its summary judgment-worthy nature") (emphasis in original).

And, further, Defendant OSG conceded that it is a proponent of "clever insincerity," which permits members to be evasive or deceptive when answering questions. (Pl. 56.1 Resp. ¶¶428-32). OSG's Rule 30(b)(6) witness testified, while under oath at his deposition, that he was using "clever insincerity" to evade Plaintiff's attorney's questions about the significant sums of OSG income that OSG's leader pocketed for herself. (*Id*. ¶433). This brazen evasiveness amplifies the need for credibility determinations that should foreclose summary judgment here.

**Forced Labor Claim.** Defendants contend that Plaintiff's forced labor claim under 18 U.S.C. § 1589 ("§ 1589") can be resolved on summary judgment. First, Defendants describe the labor as "voluntary" and no more than (i) "chores" performed in Montana; (ii) class set-up and class attendance; and (iii) Christmas party planning. (Def. Ltr. at 1). But Plaintiff's labor far exceeds

Defendants' sanitized list, including: digging ditches, oiling and stripping logs, installing insulation, extensive cooking and cleaning, recruitment, among other tasks. (*See* Pl. 56.1 Resp. ¶¶ 82, 288, 293). Plaintiff's labor was also not "voluntary" (*id.* ¶¶ 175, 237, 295, 302) as corroborated by other members' lack of voluntariness. (*See, e.g., id.* ¶¶101, 260).

Second, Defendants argue that they can establish, as a matter of law, that they "did not obtain Schneider's labor or services 'by means of' threats or fear of serious harm." (Def. Ltr. at 1-2). Not so. Obtaining the type of labor here by means of "any scheme, plan, or pattern" intended to cause a person to believe that nonperformance would result in "serious harm" to himself or another person, constitutes forced labor. *See* § 1589(a)(4). And "serious harm" includes "any harm . . . including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances" to perform labor to avoid incurring that harm. § 1589(c)(2). Assessing a violation of §1589 is therefore "intensely factual." *U.S. v. Raniere*, 384 F. Supp. 3d 282, 313 (E.D.N.Y. 2019) ("[w]hether [trafficking victim's] continued acquiescence to servitude was objectively reasonable under the circumstances []is an intensely factual issue that may only be decided after a trial"). It covers situations even where a plaintiff may come and go as he pleases. *Paguirigan v. Prompt Nursing Emp. Agency LLC*, 286 F. Supp. 3d 430, 437-39 (E.D.N.Y. 2017).

Defendants also used a scheme, pattern, or plan of manipulative tactics to lure Plaintiff into OSG, and then enmesh his livelihood within OSG to trap him. (Pl. 56.1 Resp. ¶¶100, 434-70). Plaintiff testified that once enmeshed, he performed that labor because he feared serious harm if he stopped. He testified: "I was stuck. I was trapped" (*id.* ¶302) and he identified the cumulative harms he feared with specificity: public humiliation, ostracism, loss of his largest client, dissemination of his most sensitive personal information, destruction of his marriage, and loss of contact with his son. (*Id.* ¶100). A different former OSG member testified that OSG's tactics also trapped her for years before she escaped. (*Id.* ¶101).

All of Plaintiff's harms (*see id.* ¶100), including fear of disclosure of sensitive personal information, are forms of "psychological, financial, or reputational" harm that may satisfy "serious harm" under §1589. *See, e.g., Raniere*, 384 F. Supp. at 313 ("the court cannot rule that the release of . . . embarrassing material voluntarily given [] never constitutes 'serious harm'"). Defendants may challenge at trial whether those harms satisfy §1589 but may not, on this record, dispose of the claim at summary judgment. Defendants' reliance on *Headley v. Church of Scientology Intern.*, 687 F.3d 1731 (9th Cir. 2012) is misplaced: "[*Headley*] is easily distinguishable because the plaintiffs in that case faced only one potential adverse consequence: excommunication . . . But in this case . . . the release of collateral could . . . ruin[] [plaintiffs'] careers, finances, and personal relationships with non-DOS members." *Raniere*, 384 F. Supp. at 313-14. The same applies here.

Third, as to Defendants' scienter, "a jury may infer a defendant's intent from his conduct and the facts surrounding his conduct." *Diggs v. Artus*, No. 10-cv-1233 CBA, 2013 WL 837271, at *12 (E.D.N.Y. Mar. 5, 2013). OSG was "big business" from which Gans Horn made enormous sums of money during the Relevant Period (Pl. Resp. 56.1 ¶¶477-81) and received uncompensated personal services and valuable gifts from members. (*Id.* ¶¶ 189-193, 291). OSG used vicious verbal abuse, taking of collateral, spying, among other coercive means to control its members. (*Id.* ¶¶507-38) and other witnesses testified to understanding the same OSG consequence structure that Plaintiff describes. (*Id.* ¶¶203, 213, 216, 244-46, 262).

Fourth, there is disputed evidence over whether the individual Defendants "knowingly benefit[ed], financially or by receiving anything of value, from participation in a [forced labor] venture" (*id.* ¶¶491-506) while "knowing or in reckless disregard" of that forced labor. (*Id.* ¶¶354, 361, 366).

**1st and 14th Amendment Defense**. Defendants' 1st or 14th Amendment defense is no bar here. The TVPA is a neutral law of general applicability that prohibits conduct, not belief, and such laws are analyzed accordingly. *See We The Patriots USA, Inc. v. Conn. Off. of Early Childhood Dev.*, 76 F.4th 130, 147-56 (2d Cir. 2023). The crux of the defense is the sincerity of Defendants' beliefs, but a "[s]incerity analysis is exceedingly amorphous, requiring the factfinder to delve into the claimant's most veiled motivations . . . [and] demands a full exposition of facts and the opportunity for the factfinder to observe the claimant's demeanor during direct and cross-examination." *Patrick*, 745 F.2d at 157. As to RFRA, Defendants did not plead it in their Answer (ECF No. 59), and whether the practices at OSG – a for-profit corporation (Pl. 56.1 Resp. ¶¶474-87) – qualifies as "a religious belief rather than a philosophy or way of life," which RFRA does not cover (*U.S. v. Meyers*, 95 F.3d 1475, 1482 (10th Cir. 1996)), or simply a scam, cannot be resolved on this record. Similarly, the "ministerial exception" applies to "a religious institution's employment decisions." *Sun v. Shen Yun Perf. Arts, Inc.*, 833 F. Supp. 3d 435, 451 (S.D.N.Y. 2026). And the ecclesiastical abstention doctrine concerns "matters of faith and doctrine and in closely linked matters of internal government," (*Belya v. Kapral*, 45 F.4th 621, 630 (2d Cir. 2022)), which does not apply where a "court [may] rel[y] exclusively on objective, well-established legal concepts," (*id.*) and, even if applicable, is too factually knotty for summary judgment here.

**The Statute of Limitations Defense**. Defendants' affirmative statute of limitations defense should be dismissed. Plaintiff filed his complaint on December 16, 2022. (ECF No. 1). Defendants' witness, a current OSG member, conceded that she viewed Plaintiff as "a fellow student" in OSG on December 19, 2012 and email records show she communicated to him, *in January 2013*, that OSG's leader believes he should consider leaving OSG (*id.* Pl. 56.1 Resp. ¶¶542-43). This witness's concession, as well as her January 2013 correspondence, places Schneider in OSG fewer than ten years from filing this action foreclosing this defense. More, the record includes a January 6, 2014 note by Plaintiff that reads "so happy to celebrate anniversary of leaving the cult" (*id.* ¶544) and his January 9, 2017 blog post commemorating the four-year anniversary of leaving OSG. (*Id.* ¶545). And Plaintiff testified that he believes he attended class in 2013. (*Id.* ¶¶381-90).

**Rule 11 Motion**. Defendants argue this is a "frivolous" action brought to support a book launch rather than Plaintiff's genuine belief of forced labor. But having withstood Defendants' Rule 12(b)(6) motion (ECF No. 47), Plaintiff's claims should not be found frivolous on its face (*see Sternberg v. Fletcher*, 143 F.3d 765, 770-71 (2d Cir. 1998)) and the record shows Plaintiff laboring against his will due to OSG's coercion. (Pl. 56.1 Resp. ¶¶100, 302). As to genuineness of Plaintiff's belief, he has been claiming he was subject to compelled labor for over a decade. (*Id.* ¶¶539-41).

Plaintiff respectfully requests that, under Your Honor's Rule III.A.4, the Court construe the pre-motion letters (and any pre-motion arguments) as the motions to (i) deny summary judgment, because the credibility determinations to decide classic jury questions of intent, consent, sincerity of belief, and reasonableness, along with the disputed evidence, render summary judgment inappropriate; and (ii) deny Defendants' Rule 11 motion because the evidentiary record and this Court's previous findings establish this case is not "frivolous."

Respectfully submitted,



Hugh D. Sandler

Elizabeth A. Geddes
Corva Law LLP
110 West 40th Street, Suite 1003
New York, New York 10018
liz@corvalaw.com

*Counsel for Plaintiff*